Filed 5/1/14  Castro v. Creative Design Interiors CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| JOSE RAMON CASTRO et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CREATIVE DESIGN INTERIORS, INC.,<br><br>Defendant and Respondent. | C070938<br><br>(Super. Ct. No. 34200900063544UOEGDS) |

Plaintiffs Jose Ramon Castro, Aquilino Espinoza, Arturo Lopez and Miguel Vargas (the putative class representatives) were employed by defendant Creative Design Interiors, Inc. (CDI) to install and supervise the installation of tile, primarily in residential properties.  The putative class representatives filed a class action complaint against CDI for various wage and hour violations.  The trial court denied their motion for class certification, concluding that the class was not sufficiently ascertainable and that common questions of fact or law did not predominate.

1

The putative class representatives now contend the trial court erred in denying class certification because (A) the class could be ascertained through CDI payroll records, and (B) common issues of fact and law predominate if damage questions are viewed in their proper context.

We conclude the trial court did not abuse its discretion in denying class certification.  Substantial evidence established significant evidentiary challenges which would have made it difficult to ascertain the identity of class members.   In addition, the trial court's conclusion that individual questions predominated over common questions did not improperly conflate liability and damage issues.  The trial court applied proper criteria and legal assumptions in ruling that class certification would not provide substantial benefits to the litigants and the court in this case.

We will affirm the order denying class certification.

BACKGROUND

CDI's customers are primarily builders of new housing developments.  CDI installs residential flooring made of stone, tile, vinyl, wood and carpet, all of which it references as tile.

The putative class representatives sought to define the class in this case as tile workers, the workers who demolish, finish, set, replace, install or repair those flooring materials.  Installation was accomplished under the direction of crew leaders who reported to area managers.

Each of the four putative class representatives was a tile worker and former CDI crew leader.  Each of them reported to the same area manager in Stockton.  Crew leaders relied on area managers for instruction on timekeeping, time reporting and paycheck distribution.  Crew leaders recruited, hired and supervised the work of their crew members; they assured that timecards were completed and they submitted and distributed paychecks.  CDI issued hourly paychecks to all tile workers, and crew leaders set the

2

hourly pay rate for their crew members. All payroll records were maintained in the Sacramento office.

CDI bid for flooring jobs based on an estimate of the combined cost of materials and labor. Crew leaders who kept a project's total cost below the bid amount kept the remainder as a completion bonus. A crew leader had the discretion to keep the entire bonus or distribute it in whole or in part to crew members. Some crew leaders falsified payroll records and timesheets, personally cashed paychecks made out to crew members or themselves and paid workers in cash according to a daily rate or a percentage of the total received. In addition, some crew leaders used aliases so they could submit multiple timesheets, cash the resulting paychecks and pay undocumented workers.

The complaint alleged that CDI told tile workers they would be paid on a piece rate basis, but then on threat of withholding wages and terminating employment, coerced the workers to complete sham timesheets. The complaint further alleged that workers were not paid for all the hours they worked, were not always given meal or rest breaks and, if they failed to meet deadlines, were subject to having money deducted from their wages. The complaint also alleged numerous other violations of labor law.

The putative class representatives testified that timesheets routinely reported eight hours of work five days a week, even though the workers sometimes worked six or seven days a week, 12 or 14 hours a day, and that, contrary to California law, the timesheets did not record start and stop times.

Crew leaders testified that they were not reimbursed for mileage or the use of personal vehicles even though CDI had a policy requiring class members to use their personal vehicles to travel between job sites and pick up materials. CDI admitted that crew leaders were not reimbursed for travel. CDI also admitted that workers had to pay for hand tools and power tools out of their own pockets, and if they used a CDI supplier account, the cost of tools would be deducted from their paychecks. CDI required regular

3

daily cell phone communication with crew leaders, but did not reimburse for personal cell phone costs.

The complaint asserted eight causes of action.[1]  The putative class representatives moved for class certification on all but one.  The class was described in the motion as "[a]ll nonexempt employees of [CDI] who worked on-site installing, repairing, or helping to install or repair wood, vinyl, carpet, tile and/or stone, or who performed pre-installation or post-installation work related to the installation or repair of wood, vinyl, carpet, tile and/or stone, on behalf of CDI at any time from November 2, 2005 to the present."  The putative class representatives estimated that the class would include more than 275 people; CDI estimated that it may include as many as 450.

After hearing evidence, the trial court denied class certification because the class would be difficult to ascertain and because common issues of law and fact did not predominate.  It concluded a class action "would not create efficiencies for the parties or the Court."

Regarding ascertainment of the class, the trial court cited evidence presented by CDI that two of the named plaintiffs worked under multiple names, engaged multiple persons to work under a single name and that one of them even worked and was paid under the name of a person who never appeared at a CDI jobsite.  The trial court also cited evidence that, as crew leaders, the named plaintiffs routinely hired workers "off the books," so there could be "a significant number of persons" who could qualify as class

---

[1]  The complaint alleged (1) failure to pay wages (Lab. Code, § 200); (2) failure to pay overtime compensation (Lab. Code, §§ 510, 1194, 1198); (3) unauthorized repayment of wages to employer (Lab. Code, § 221); (4) failure to provide meal and rest breaks (Lab. Code, §§ 226.7, 512, subd. (a)); (5) waiting time penalties for nonpayment of wages (Lab. Code, § 203); (6) failure to reimburse expenditures (Lab. Code, § 2802); (7) failure to provide accurate wage statements (Lab. Code, § 226); and (8) unfair business practices (Bus. & Prof. Code, § 17200).  Class certification was sought on all but the fourth cause of action.

members but not be identified in any employment records. On the issue of common questions, the trial court found a predominance of individual issues. It ruled that even if the alleged wrongful conduct was proven, determining whether an individual employee suffered harm from the conduct would require a "worker-by-worker and job-by-job" analysis.

Additional factual details are included in the discussion below.

STANDARD OF REVIEW

Class actions are authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382) Parties seeking class certification must establish both an ascertainable class and a well-defined community of interest among class members. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.) The "community of interest" element includes three factors: " '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Ibid*.) The certification question is procedural, meaning that instead of looking to whether the claims are legally or factually meritorious, the inquiry must focus on "whether . . . maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha* (1972) 7 Cal.3d. 232, 238.)

We review an order denying class certification for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) We will not disturb the trial court's ruling unless it used improper criteria or made erroneous legal assumptions. (*Id*. at p. 327.) If a class certification motion requires the evaluation of disputed facts, we review the trial court's factual determinations under the substantial evidence standard. (*Id*. at p. 328.)

## DISCUSSION

The putative class representatives contend the trial court erred in denying class certification because (A) the class could be ascertained through CDI payroll records, and (B) common issues of fact and law predominate if damage questions are viewed in their proper context.

### A

We first examine the contentions relating to the ascertainment of class members. The putative class representatives contend that, as a matter of law, the burden of keeping accurate time and pay records belongs with employers, so to the extent potential class members were misidentified in CDI personnel records, the problem must be attributed to CDI. CDI contends that the crew leaders, including the putative class representatives, were responsible for hiring, firing and submitting payroll data for their crews and their falsification of records was not revealed until depositions were taken in preparation for the class certification motion. The putative class representatives concede there is no evidence "that CDI knew of, controlled, or suffered or permitted to work any individual not formally on its payroll."

CDI argues that, given the falsified records, there are no objective means to determine whether individuals who are not accurately identified in CDI personnel records are employees -- and class members -- without conducting a fact-intensive " 'control test' " for each of them.

The fact that crew leaders hired undocumented workers and paid them cash from paychecks made out to the leaders created an ascertainment problem. The putative class representatives respond that only those identified in the official CDI payroll records are intended to be class members, and the class definition excludes anyone for whom no records exist. They argue it should not matter what crew leaders did with paychecks once they were cashed, and individuals hired "under the table" should be of no concern to the class because they could not be CDI employees if they were not on the CDI payroll. The

6

proposed class was defined, however, as those who "worked on-site installing, repairing, or helping . . ." and it did not exclude individuals who met that definition but were not issued CDI paychecks. The definition makes no distinction between workers identified by payroll records and other workers.

To notify only those individuals named in the payroll records necessarily would have deprived unidentified or misidentified workers of notice. The trial court could not presume that those individuals were employed by the crew leaders instead of by CDI. As a matter of law, payroll records are not sufficient to conclusively determine the existence of an employer-employee relationship. (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1435.) Rather, an individualized application of the multifaceted common law employment test is required when there is ambiguity. (*Id*. at p. 1434.) Ignoring workers not identified in payroll records would not have made the class appropriately ascertainable nor did the putative class representatives proffer any other way to get around the problems created by the inaccurate payroll records.

Moreover, two of the putative class representatives worked under different names. One of them under three names, none of them his own, and the other worked under seven names. They also shared an alias at times while working on separate crews. The same two individuals testified that they prepared and submitted all timesheets for their crews, using borrowed social security numbers that did not match actual worker names, then cashed paychecks for the group and paid the workers in cash using a daily rate that bore no relationship to the timesheets or paychecks. CDI acknowledges its legal obligation to maintain accurate time and pay records but denies that it knew about or sanctioned these practices.

"A class representative has the burden to define an ascertainable class." (*Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 918.) Class members are "ascertainable" if they can be readily identified without unreasonable expense or time by reference to official or business records. (*Id.* at p. 919.) The standard does not

7

distinguish among the types of records from which class members may be "readily identified" and it allows for no apportionment of blame when records are inadequate. In this case, the putative class representatives said the tangle of names and social security numbers ultimately was the fault of CDI. That may be true, but the trial court found that CDI's payroll records were unreliable for the purpose of ascertaining class members, and that also appears to be true. For an ascertainment analysis, we see no logical difference among records that do not exist and records that are unreliable, whether because of negligence, malfeasance or other cause. The issue for class certification is how difficult it would be to ascertain the identity of class members from the records.

"Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914.) This is not a case where the uncertainty lies in identifying which employees worked overtime or which worked on relevant projects -- it is a case where the uncertainty lies in identifying individuals to notify in the first place. (Compare *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1208 [class ascertainable from payroll records although some may not have worked overtime] and *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 136 [class ascertainable from payroll records although some were not assigned to relevant projects] with *Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 648 [class not ascertainable because there were no business records to identify class members].)

Because half of the putative class representatives admitted using false identities for themselves and their crew members, the trial court reasonably concluded that the task of identifying class members from CDI's business records would not be easy. The putative class representatives cite the burden-shifting rule in *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, but that case is inapposite. *Hernandez* involved an employee who demonstrated that he had performed unpaid work; he was not required to prove exactly how much unpaid work because the employer failed to maintain accurate

8

payroll records. (*Id*. at p. 727.) *Hernandez* involved the calculation of damages, not the ascertainment of class members.

Quantifying damages is not a relevant concern in the evaluation of class certification. (*Hicks v. Kaufman & Broad Home Corp*., *supra,* 89 Cal.App.4th at 914.) Moreover, the problem of damages is manageable in a class action, but class ascertainment " 'goes to the heart' " of class certification. (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858.) The critical issue is whether class members are " ' "presently ascertainable" ' " so that adequate notice can be provided to those who would be bound by the class litigation. (*Ibid*.)

Substantial evidence supports the trial court's determination, and the trial court did not abuse its discretion when it determined the class was not sufficiently ascertainable.

B

We next turn to the commonality issues. A class action meets the "community of interest" test when the plaintiffs prove that common questions of law or fact predominate over individual ones and also that the claims of the class representatives are typical of the class and they can adequately represent the class. (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.App.4th at p. 1104.) The trial court found no community of interest primarily because common issues did not predominate. Although the trial court called adequacy of representation "not determinative," it also expressed concern that the putative class representatives, who had collected and cashed paychecks and redistributed the cash based on their own assessments, may have interests antagonistic to those class members who were underpaid by the practice.

The putative class representatives argued in the trial court that common questions predominated because certain CDI policies were unlawful. They claimed CDI failed to record when a worker started and stopped work or took meal and rest breaks; did not pay for time spent loading, unloading, waiting, or traveling between jobs; and forced workers

to pay for their own tools. But the complaint focused on allegations that workers were routinely underpaid due to CDI's practice of paying on a piece-rate per-job basis and falsifying time records.

The motion for class certification alleged a common scheme of using job bids to set pay parameters without respect to actual hours worked. CDI denied that this was a sanctioned or common practice. The trial court observed that the crew leaders had apparently run amok; CDI agreed, claiming it had appropriate policies and procedures in place and had no idea the crew leaders were not following them.

The trial court concluded that even if all the claims of unlawful labor practices in the complaint were accepted as true, there still would need to be proof that any particular worker was underpaid as a result. The trial court cited *Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 40, for the proposition that class certification is improper when variations in proof of harm require individualized evidence.

The putative class representatives contend the trial court improperly conflated liability and damages. They are correct that if liability can be established by common facts, individual proof of damages does not prevent class certification. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) But a class action is rarely appropriate where, after class judgment, class members "would be required to individually prove not only damages but also liability." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 463.)

The putative class representatives argue liability can be shown with timesheets that do not include worker start and stop times. They say CDI's timesheets uniformly failed to include such information, a fact that establishes classwide liability. (Cal. Code Regs., tit. 8, § 11160, subd. 6(A)(1); see Industrial Welfare Com. wage order No. 16-2001, § 6(A)(1).) We disagree. The timesheets proffered as evidence included spaces for start and stop times, spaces that were left blank. The putative class representatives admitted completing and submitting the timesheets for their crews. The trial court did

10

not find evidence of a uniform CDI policy unlawfully prohibiting the use of start and stop times; rather, it found evidence that the crew leaders had been running amok.

In addition, the putative class representatives claim class certification was justified because CDI had policies that it would not pay for travel time, waiting time, and time spent loading and unloading. But the cited evidence only shows that CDI initiated a formal policy in 2009 applying a lower rate of pay for such time, and the deposed company representative was not sure what the policy had been before 2009.

In any event, resolving these issues would not have markedly narrowed the issues for trial. (See *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at 339 [commonality standard requires comparison of issues that may be jointly tried with those that must be separately adjudicated].) The crux of the complaint was the alleged practice of disregarding wage and hour rules to pay workers on a piece-rate basis and its alleged result of widespread underpayment. CDI claimed to be unaware of the practice and there was no evidence that it was followed by anyone other than the putative class representatives.

Determining underpayment due to a piece-rate scheme would involve determining which workers submitted timesheets for themselves and which had timesheets submitted for them by others, which in turn would involve the identification problems discussed in part A, *ante*. Assuming the individual workers could be identified, there would remain a necessary evaluation of whether the submitted timesheets reflected actual hours worked and, if not, whether, for each pay period, the workers were nonetheless compensated by the crew leader (according to a daily or percentage rate) less than if the timesheets had been accurate. As the trial court concluded, this would require an individualized factual inquiry on a "worker-by-worker and job-by-job basis." These circumstances did not improperly conflate liability and damages and were properly considered by the trial court as factors weighing against class certification. (*Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1427-1428 [courts deny certification when wrongfulness cannot

11

be determined without reference to individuals].)  Because of the potential for injustice, trial courts must carefully weigh benefits and burdens and grant class certification " ' "only where substantial benefits accrue both to litigants and the courts." ' "  (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 435.)

Finally, although the trial court did not find it determinative, substantial evidence supports the concern that the putative class representatives may have been unable to adequately represent the class members who were underpaid because the crew leaders cashed their paychecks and redistributed the payments.  The potential for conflict is significant given CDI's insistence that this crew leader conduct was unauthorized.

On this record, the trial court did not abuse its discretion in denying class certification.

DISPOSITION

The order denying class certification is affirmed.


                                         MAURO                    , J.


We concur:


          BLEASE             , Acting P. J.


          HOCH             , J.


12